IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

HUCKESTEIN MECHANICAL SYSTEMS, INC., )
        Plaintiff, )
         )
        vs. ) Civil Action No. 13-479
         )
IC STAFFING SOLUTIONS, LLC and PHILIP M. )
SAUVAGEOT, )
        Defendants. )

MEMORANDUM OPINION

Plaintiff, Huckestein Mechanical Systems, Inc., brings this action against Defendants, IC Staffing Solutions, LLC ("IC Staffing") and Philip M. Sauvageot, alleging claims of professional malpractice, breach of contract, conversion and negligent hiring/supervising, arising out of accounting services that were provided to it by IC Staffing, Sauvageot and IC Staffing's former employee, Douglas Michael Foster.

Presently pending before the Court for resolution is Defendants' motion to dismiss Count V of the complaint, the claim for negligent hiring/supervising against IC Staffing. For the reasons that follow, the motion will be granted.

Facts

From approximately January 2011 to August 2011, Sauvageot provided accounting services to Huckestein as an employee of non-party Independent Controller Services, Inc. (Compl. ¶ 5.) In approximately August 2011, Sauvageot left that company to form IC Staffing and continued performing accounting services to Huckestein. (Compl. ¶ 6.) Plaintiff alleges that IC Staffing and its employees lacked the proper accounting expertise and committed several accounting errors that financially harmed Huckestein. (Compl. ¶¶ 7-17.) Specifically, Plaintiff

alleges that, after Foster's death in June 2012, it "learned that his qualifications and experience were not as represented and were grossly inadequate for the job." (Compl. ¶ 9.) In addition, Plaintiff "uncovered fraud and theft that was committed by Foster during the course and scope of his work with IC Staffing." (Compl. ¶ 10.) According to the allegations of the complaint, Foster falsified financial records, produced erroneous reports, and engaged in numerous "reckless and negligent accounting practices." (Compl. ¶¶ 11-12.) In addition, Plaintiff alleges that IC Staffing did not provide adequate oversight of his work and that Sauvageot improperly performed certain work. (Compl. ¶¶ 14-16.)

Procedural History

On March 14, 2013, Plaintiff[1] filed a complaint against IC Staffing and Sauvageot in the Court of Common Pleas of Allegheny County, Pennsylvania. Count I alleges a claim of professional malpractice against IC Staffing and Count II alleges it against Sauvageot. The remainder of the complaint consists of three claims against IC Staffing: Count III alleges a claim of breach of contract, Count IV alleges a claim of conversion and Count V alleges a claim of negligent hiring/supervising.

On March 28, 2013, Defendants filed a notice of removal, removing the action to this Court on the basis of diversity jurisdiction. On April 8, 2013, Defendants filed an amended notice of removal, to clarify that: Plaintiff is a Pennsylvania corporation with a principal place of business in Duquesne, Pennsylvania; IC Staffing is a limited liability company whose sole member is Sauvageot, a citizen of Ohio; and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00. (ECF No. 3 ¶¶ 3-6, 10-16 & Ex. A.)

On April 8, 2013, Defendants filed a motion to dismiss Count V of the complaint. On

---

[1] In the complaint, Plaintiff identifies itself as "Huckestein Mechanical Services, Inc." but in the notice of removal, Defendants refer to Plaintiff as "Huckestein Mechanical Systems, Inc."

2

April 17, 2013, Plaintiff filed a brief in opposition and on April 19, 2013, Defendants filed a reply brief.[2]

Standard of Review

The Supreme Court has issued two decisions that pertain to the standard of review for a motion to dismiss for failure to state a claim upon which relief could be granted under Federal Rule of Civil Procedure 12(b)(6). The Court held that a complaint must include factual allegations that "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "[W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice' but also the 'grounds' on which the claim rests." Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). In determining whether a plaintiff has met this standard, a court must reject legal conclusions unsupported by factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements;" "labels and conclusions;" and "'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (citations omitted). Mere "possibilities" of misconduct are insufficient. Id. at 679. District courts are required to engage in a two part inquiry:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions…. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show the plaintiff has a "plausible claim for relief." … In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted).

Defendants move to dismiss Count V on the grounds that it is barred by the economic

---

[2] On April 17, 2013, Defendants filed an answer with respect to the remaining counts.

3

loss rule and the gist of the action doctrine. Plaintiff contends that the claim for negligent hiring/supervising is not barred because the duty that it cites is imposed by social policy, not by contractual agreement.

Determining State Law

The Court of Appeals has stated that:

> In adjudicating a case under state law, we are not free to impose our own view of what state law should be; rather, we are to apply state law as interpreted by the state's highest court in an effort to predict how that court would decide the precise legal issues before us. Kowalsky v. Long Beach Twp., 72 F.3d 385, 388 (3d Cir. 1995); McKenna v. Pacific Rail Serv., 32 F.3d 820, 825 (3d Cir. 1994). In the absence of guidance from the state's highest court, we are to consider decisions of the state's intermediate appellate courts for assistance in predicting how the state's highest court would rule. McKenna, 32 F.3d at 825; Rolick v. Collins Pine Co., 925 F.2d 661, 664 (3d Cir. 1991) (in predicting state law, we cannot disregard the decision of an intermediate appellate court unless we are convinced that the state's highest court would decide otherwise).

Gares v. Willingboro Township, 90 F.3d 720, 725 (3d Cir. 1996). Because this is a diversity action, the Court must predict how the Pennsylvania Supreme Court would rule if presented with this situation. Whether these doctrines apply in this case is an issue of law to be resolved by the court. Bohler-Uddehom America, Inc. v. Ellwood Group, Inc., 247 F.3d 79, 103 (3d Cir. 2001).

The Pennsylvania Supreme Court recognizes that the "economic loss doctrine provides [that] no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage." Excavation Tech., Inc. v. Columbia Gas Co. of Pa., 985 A.2d 840, 841 n.3 (Pa. 2009) (quotation omitted). Pennsylvania has adopted the Restatement (Second) of Torts § 552 exception (when professionals provide false information for the guidance of others in a business transaction) with respect to an architect/contractor situation, Bilt-Rite Contractors, Inc. v. The Architectural Studio, 866 A.2d 270 (Pa. 2005), but has refused to extend it to a utility company (sued by an excavator for

4

economic damages when the utility erred in marking the locations of some gas lines), because the utility company did not engage in supplying information to others for pecuniary gain. Excavation Tech., 985 A.2d at 843-44. See also Azur v. Chase Bank, USA, N.A., 601 F.3d 212, 223 (3d Cir. 2010) (credit card company not in the business of providing cardholder with information for pecuniary gain, so cardholder could not invoke § 552 exception).

Pennsylvania courts have also recognized the "gist of the action doctrine," which states that "a claim should be limited to a contract claim when 'the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied in the law of torts.'" Bohler-Uddehom, 247 F.3d at 104 (quoting Bash v. Bell Tel. Co., 601 A.2d 825, 830 (Pa. Super. 1992)). Although the Pennsylvania Supreme Court has not expressly adopted the gist of the action doctrine, the Pennsylvania Superior Court and federal courts applying Pennsylvania law have predicted that it would adopt it and have applied it. See Reardon v. Allegheny College, 926 A.2d 477, 486 (Pa. Super. 2007); Bohler-Uddehom, 247 F.3d at 103-04. The Court of Appeals has twice noted that the gist of the action doctrine and the economic loss doctrine are "remarkably similar" and has indicated that, in a non-products liability context, gist of the action is a "better fit." Pediatrix Screening, Inc. v. Telechem Int'l, Inc., 602 F.3d 541, 544 n.5 (3d Cir. 2010); Bohler-Uddeholm, 247 F.2d at 104 n.11. As the court has explained:

> The gist of the action "doctrine is designed to maintain the conceptual distinction between breach of contract claims and tort claims. As a practical matter, the doctrine precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims." eToll, Inc. v. Elias/Savion Adver., Inc., 2002 PA Super 347, 811 A.2d 10, 14 (2002) (citation omitted). In some circumstances, "it is possible that a breach of contract also gives rise to an actionable tort[.] To be construed as in tort, however, the wrong ascribed to defendant must be the gist of the action, the contract being collateral." Id. (alteration in original) (quoting Bash v. Bell Tel. Co., 411 Pa. Super. 347, 601 A.2d 825, 829 (1992)). That the misconduct was fraudulent does not bar application of the gist of the action principle. Werwinski v. Ford Motor Co., 286 F.3d 661, 681 (3d Cir. 2002).

5

Pediatrix, 602 F.3d at 548.

### Negligent Hiring and Supervision Claims

Recently, the Court of Appeals stated that:

> To recover for negligent supervision under Pennsylvania law, a plaintiff must prove that his loss resulted from (1) a failure to exercise ordinary care to prevent an intentional harm by an employee acting outside the scope of his employment, (2) that is committed on the employer's premises, (3) when the employer knows or has reason to know of the necessity and ability to control the employee. Dempsey v. Walso Bureau, Inc., 431 Pa. 562, 246 A.2d 418, 420 (1968); Heller v. Patwil Homes, Inc., 713 A.2d 105, 107–08 (Pa. Super. Ct.1998).

Belmont v. MB Investment Partners, Inc., 708 F.3d 470, 487-88 (3d Cir. 2013) (footnote omitted). The court rejected the defendants' argument that the tort relates solely to bodily harm, observing that "Pennsylvania does not appear to limit the tort of negligent supervision to cases of physical injury." Id. at 488 n.23 (citing Heller, 713 A.2d at 109). In Heller, the plaintiffs were defrauded by William Strouse, sales manager for Patwil Homes, into giving Strouse $49,500 for him to invest in certain business ventures that turned out to be fraudulent. The court noted that Strouse had previously engaged in investment fraud resulting in his being disciplined by the Pennsylvania Securities Commission, but since Patwil Homes hired him to perform unrelated real estate services, it could not be held liable for negligent hiring. On the hand, the court held that the total lack of supervision of Strouse exposed Patwil Homes to constructive notice that he was engaging in activity mushrooming into criminal behavior while operating out of Patwil's offices and using Patwil employees to execute his schemes, and thus it could be held liable for negligent supervision.

In Belmont, the Court of Appeals explained how negligent supervision differs from the tort of employer negligence under a respondeat superior theory of liability:

> A claim for negligent supervision provides a remedy for injuries to third parties who would otherwise be foreclosed from recovery under the principal-agent

> doctrine of respondeat superior because the wrongful acts of employees in these cases are likely to be outside the scope of employment or not in furtherance of the principal's business.

Id. at 489 (citation omitted). See also Heller, 713 A.2d at107.

Defendants cite several cases in which district courts have held that negligent supervision claims were barred by the economic loss doctrine. See Estate of Clark ex rel. Clark v. The Toronto Dominion Bank, 2013 WL 1159014, at *10 (E.D. Pa. March 21, 2013); Flannery v. Mid Penn Bank, 2008 WL 5113437, at*7 (M.D. Pa. Dec. 3, 2008). However, neither case contains a detailed examination of the issue and they do not explain how a complaint can state a claim for negligent supervision involving only economic loss (as in Heller) and yet be barred by the application of the economic loss doctrine. See Bilt-Rite, 866 A.2d at 288 (observing that it would be "nonsensical" to allow a party injured by a professional who provided false information for the guidance of others in a business transaction to pursue a claim for economic losses under Restatement (Second) of Torts § 552 only to conclude that the party is unable to recover because it seeks only economic losses).

Nevertheless, several factors lead to the conclusion that the gist of the action doctrine applies to bar Count V of the complaint. First, the gist of this cause of action arises out of the duties imposed by the contract entered into by Huckestein to engage IC Staffing and its employees (including Foster) to perform accounting services. The duties owed by IC Staffing do not arise out of the general social policies embodied in the law of torts. Plaintiff argues that Pennsylvania law imposes "on an employer the duty to exercise reasonable care in selecting, supervising and controlling employees." R.A. ex rel. N.A. v. First Church of Christ, 748 A.2d 692, 697 (Pa. Super.), appeal denied, 760 A.2d 855 (Pa. 2000). However, that case did not discuss the gist of the action doctrine and did not involve a breach of contract claim. IC

7

Staffing's liability for Foster's actions, if any, will arise out of Huckestein's contract with IC Staffing to provide accounting services.  See Jodek Charitable Trust, R.A. v. Vertical Net, Inc., 412 F. Supp. 2d 469, 479-80 (E.D. Pa. 2006) (rejecting plaintiff's argument that the duty to properly process stock transfers is imposed as a matter of social policy rather than by mutual consensus).

Second, the negligent hiring/supervising claim is duplicative of other counts of the complaint, such as the claims for malpractice and breach of contract.  See eToll, 811 A.2d at 19-21.  Plaintiff has alleged that Foster committed the acts that form the basis for the complaint while he was acting within the scope of his employment.  (Compl. ¶¶ 10, 13, 33.)  It has also alleged that Foster's alleged theft constituted a breach of the services contract between Plaintiff and IC Staffing.  (Compl. ¶¶ 29-30.)

Thus, the gist of the action sounds in contract and Defendants' motion to dismiss Count V, alleging a tort claim of negligent hiring/supervising, will be granted.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

HUCKESTEIN MECHANICAL SYSTEMS, INC., )
        Plaintiff, )
         )
        vs. ) Civil Action No. 13-479
         )
IC STAFFING SOLUTIONS, LLC and PHILIP M. )
SAUVAGEOT, )
        Defendants. )

## ORDER

AND NOW, this 25th day of April, 2013,

IT IS HEREBY ORDERED that Defendants' motion to dismiss Count V of the complaint (ECF No. 5) is granted.

        s/Robert C. Mitchell_____
        ROBERT C. MITCHELL
        United States Magistrate Judge